UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MOMENTA PHARMACEUTICALS, INC. and SANDOZ INC., ) ) ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No.  10-12079-NMG |
| ) | |
| TEVA PHARMACEUTICALS INDUSTRIES LTD ) and TEVA PHARMACEUTICALS USA, INC., ) | |
| ) | |
| Defendants. ) ) | |

**PLAINTIFFS MOMENTA PHARMACEUTICALS, INC.
AND SANDOZ INC.'S MEMORANDUM IN SUPPORT
OF THEIR MOTION FOR LIMITED EXPEDITED DISCOVERY**

This memorandum is filed in support of the Motion For Limited Expedited Discovery

filed by Plaintiffs Momenta Pharmaceuticals, Inc. and Sandoz Inc. (collectively, "Momenta").

On December 2, 2010, Momenta commenced this patent infringement action against

Defendants Teva Pharmaceuticals Industries Ltd. and Teva Pharmaceuticals USA, Inc.

(collectively, "Teva").  The present motion seeks limited expedited discovery (in advance of the

Rule 26(f) Conference) in order to determine whether a motion for a preliminary injunction

should be filed in this action.

Teva has announced its intention to begin selling imminently a generic enoxaparin

pharmaceutical product in the United States.  Momenta alleges that this conduct will infringe two

Momenta patents.  The requested expedited discovery is narrowly tailored to allow Momenta to

evaluate the scope of Teva's infringement and the imminence of its product launch -- issues that

bear directly on the question whether preliminary injunctive relief is necessary and appropriate.

The early discovery sought by this motion will impose no material burden on Teva.

## I.     INTRODUCTION

Momenta alleges that Teva is infringing, and/or imminently will infringe, Momenta's

U.S. Patent Nos. 7,575,886 and 7,790,466 (collectively, the "Momenta Patents") by importing

into, offering for sale and selling in, the United States commercial quantities of a generic

enoxaparin product that is made by processes that are claimed in the Momenta Patents.

Enoxaparin is a low molecular weight heparin product.  It is used to prevent or retard

blood clotting.  Sanofi-Aventis developed the first enoxaparin which it sells under the brand

name Lovenox®.  Plaintiffs have developed, and now sell, an FDA-approved generic enoxaparin

product.  Teva has submitted an Abbreviated New Drug Application ("ANDA") by which it asks

the FDA to approve its sale of a competing generic enoxaparin product.

Teva has stated publicly that its generic enoxaparin product meets FDA requirements for

"sameness" with Lovenox® and that FDA approval is "imminent."  Assuming the truth of Teva's

statements, it is probable that Teva has used, or is using, Momenta's patented methods to make

the enoxaparin product that it will sell upon approval by the FDA.  Teva further states that it is

prepared to launch its product immediately upon receiving FDA approval.  The commencement

of sales by Teva will have an irreparable impact on the market for Plaintiffs' generic enoxaparin

product.  Consequently, Momenta believes that a preliminary injunction to prevent Teva's

infringement during the pendency of this case likely will be necessary.

By the present motion, Momenta seeks narrowly focused, expedited discovery in order to

fully evaluate whether a preliminary injunction should be filed.  In particular, Momenta requests

immediate production of the following materials:  1) Teva's generic enoxaparin ANDA, all

amendments to that ANDA filed with the FDA, and any related Drug Master File; 2) all

communication between Teva and the FDA relating to Teva's ANDA; and 3) manufacturing

records (including certificates of testing and/or certificates of analysis) for each batch of generic

enoxaparin that Teva produced on or after August 18, 2009 (the date that the first of the

Momenta patents issued) in preparation for a commercial launch of its generic enoxaparin

product.

In circumstances like these, courts permit expedited discovery when the discovery

requested (1) is limited in scope, (2) will allow the court to reach the core issues of the case more

quickly, and (3) imposes minimal burden on the opposing party.  The categories of information

sought by Momenta are limited in number, targeted at information relevant to the central issues

in this case, and reasonably designed to permit Momenta to determine quickly whether to seek a

preliminary injunction.

Accordingly, Momenta requests leave to serve upon Teva the document request attached

as Exhibit A to the motion, and ask the Court to shorten to fifteen days the time within which

Teva must produce the specified documents.  Momenta acknowledges the proprietary and

confidential nature of the requested information.  Plaintiffs will negotiate with Teva a

confidentiality agreement and protective order.  A proposed Protective Order has been provided

to Teva for its consideration.  Pending the Court's approval of such a protective order, all

documents produced by Teva will be maintained in confidence by Plaintiffs' outside counsel.

## II.     <u>FACTS</u>

A.     <u>Momenta, Sandoz, and the Momenta Patents</u>

Momenta is in the business of identifying, characterizing and engineering complex drugs

and biologics.  Plaintiff Sandoz develops, manufactures and sells generic drug products and

biologics.  Momenta and Sandoz entered into a collaboration and licensing agreement in August

2005 pursuant to which they developed a generic version of enoxaparin, the active ingredient in a

brand name product called Lovenox®.  The Momenta/Sandoz collaboration led to the filing of

ANDA No. 77-857 by which Sandoz sought FDA approval to market Plaintiffs' product.

3

Enoxaparin is a widely used anti-coagulant.  It is made by processing natural heparin (derived from pig intestines) into a mixture of oligosaccharides that have certain specific characteristics.[1]

Non-party Sanofi-Aventis developed the first enoxaparin which Sanofi sells under the name Lovenox®.  Sanofi uses a proprietary process to make enoxaparin.  That process results in a unique mixture of low molecular weight saccharide chains, some of whose components do not exist in unprocessed heparin.  In order to develop and sell a generic form of Lovenox®, firms like Momenta, Sandoz and Teva face the challenge of establishing that each batch of enoxaparin that they manufacture has the specific structural profile of Lovenox®.

Momenta developed, refined and patented novel methods used in the processing of an enoxaparin preparation.  Those processes assure that only drug substance that the FDA deems bioequivalent to Lovenox® -- because it has the relevant structural characteristics of Lovenox® -- is manufactured into final drug product.  On August 18, 2009, the United States Patent and Trademark Office (the "PTO") issued U.S. Patent No. 7,575, 886 (the "'886 patent") entitled "Analysis of Sulfated Polysaccharides."  The '886 patent relates generally to the identification of a particular structural signature of enoxaparin.  On September 7, 2010, the PTO issued U.S. Patent No. 7,575,466 (the "'466 patent") entitled "Evaluating Mixtures of Low Molecular Weight Heparins By Chain Profiles or Chain Mapping."  The '466 patent covers certain methods of processing an enoxaparin preparation that include the determination the preparation contains certain defined oligosaccharide structures in defined ranges.

Momenta is the assignee and owner of the '886 and the '466 patents.  Momenta granted Sandoz an exclusive license under both patents.  On July 23, 2010, the FDA approved an ANDA

---

[1]      A saccharide is a sugar.  An oligosaccharide is a chain of sugars.  A tetrasaccharide, referenced below, is a chain consisting of four sugars.

allowing Sandoz to market the first generic enoxaparin product.  Hundreds of millions of dollars of this product have since been sold.

The FDA has stated that *all* applicants for generic enoxaparin must satisfy certain criteria to establish that each batch of generic enoxaparin that they produce is bioequivalent to Lovenox®.  *See* "Establishing Active Ingredient Sameness For Generic Enoxaparin Sodium, A Low Molecular Weight Heparin," Exhibit A.[2]  One of those criteria is that 15-25% of the saccharide chains that make up enoxaparin include a particular chemical structure at a particular location -- a 1,6-anhydro derivative on the reducing end of the chain.  *See* FDA approved label, Exhibit B at 22.  The 1,6-anhydro derivative is not found in unprocessed heparin.  It is a result of the methods used to make Lovenox®.  The approved label for Lovenox® and all generic versions of Lovenox® must state expressly that the 1,6-anhydro derivative is present at the required location and in the required amount.  *Id.*

The claims of the '886 patent are directed, *inter alia*, to methods for "analyzing an enoxaparin sample for the presence or amount of a non naturally occurring sugar associated with peak 9 of FIG. 1" of the '886 patent.  The 1,6-anhydro derivative structure that, by FDA requirement, must be present in the brand and every generic enoxaparin product, is a "non-naturally-occurring sugar associated with peak 9 of Fig. 1 of the '886 patent."  Momenta alleges that in order to manufacture a generic enoxaparin product that meets FDA requirements, Teva is using a method that is claimed in the '886 patent.

The FDA also has specified that generic enoxaparin must match certain oligosaccharide sequence profiles of Lovenox®.  Among other things, the FDA requires that each batch of enoxaparin include particular short chain structures, called tetrasaccharides, whose (four)

---

[2]      Exhibits cited herein are attached to the Declaration of Michael E. Murawski, Esq. filed contemporaneously herewith.

component sugars are ordered in particular, defined sequences.  Each subspecies of

tetrasaccharide -- each chain of four sugars that is ordered differently from the other chains of

four saccharides -- must be present in defined ranges (expressed in percentage amounts) in each

batch.  In order to meet this requirement, a generic manufacturer must incorporate into its

manufacturing process a method of testing each batch of enoxaparin drug substance that

identifies, and confirms the presence of, tetrasaccharide structures that have the required sugar

sequences.  This is accomplished by the use of the processes claimed in the '466 patent.

Momenta alleges that Teva uses the methods of the '466 patent to determine whether individual

batches of drug substance should continue to be processed into final drug product form.[3]

> B.     The Need for Preliminary Injunctive Relief

Teva has stated publicly that FDA approval of its generic enoxaparin is imminent, and

that it will be ready to sell its product immediately following FDA approval.  On May 4, 2010,

Teva's CEO stated "all the questioning we get from the FDA leads us to be fairly confident that

[approval] will come....  We're just hopeful that it comes soon as we see the questioning [sic].  It

just leads us to believe that it is that we're far down the path."  Teva Q1 2010 Earnings Call,

dated May 4, 2010, Exhibit C.

On July 23, 2010, Teva issued a press release stating that "[i]t believes it has

demonstrated to the FDA that its version of generic Lovenox® meets their criteria and that

Teva's pending ANDA is approvable."  Teva Press Release, dated July 23, 2010, Exhibit D.

---

[3]     A Teva press release states that Teva has not infringed the Momenta Patents because its manufacturing activities to date have taken place outside the United States.  However, 35 U.S.C. §271(g) makes it an act of infringement to import into the United States, or to offer to sell, or sell in the United States a product made by a process that infringes a U.S. patent, regardless of where that product is made.

On August 5, 2010, Teva's Research and Development Officer was quoted as stating that "We are waiting to receive the approval soon and the chances of receiving it is high." "Teva copy of Lovenox® may be close," Reuters, August 5, 2010, <u>Exhibit E</u>.

On November 2, 2010, Teva's CEO stated that Teva has "confirmed that our version of generic Lovenox® meets the FDA criteria to demonstrate chemical sameness," and the CEO of Teva North America Pharmaceuticals said that Teva is "hopeful" that it will receive FDA approval before year end 2010, <u>Exhibit F.</u>

Teva states that it will be ready to sell commercial quantities of its generic enoxaparin promptly upon approval by the FDA. The President and CEO of Teva North American Pharmaceuticals has said that "[A]ll I can say is that when that approval comes, we'll be ready." and "As far as launch quantities with respect to enoxaparin, the answer is yes we're in good shape. So we just will need the approval...." Teva Q4 2009 Earnings Conference, dated February 16, 2010, <u>Exhibit G.</u> Teva Q2 2010 Earnings Conference, dated July 27, 2010, <u>Exhibit H.</u>

In order to be prepared for immediate commercial launch in the United States, Teva must already have manufactured, and/or be in the process of manufacturing, commercial quantities of generic enoxaparin that meets the FDA requirements described above.

### III.  <u>ARGUMENT</u>

A.  <u>The Legal Standard for Expediting Discovery</u>

The scope and timing of discovery is a matter within the district court's discretion, and "the moratorium on discovery prior to the parties' Rule 26(f) Conference may be lifted by court order." *Wheeler v. HXI, LLC*, No. 10-cv-145-JD, 2010 WL 3023518 at *1 (D.N.H. Jul. 28, 2010); *McMann v. Doe*, 460 F. Supp. 2d 259, 265 (D. Mass. 2006) (Tauro, J.). "The inquiry for the court [on the question of whether to grant discovery in advance of the Rule 26(f) Conference]

is whether the movant has established good cause for expedited discovery." *Wheeler*, 2010 WL 3023518 at *1; *McMann*, 460 F. Supp. 2d at 265. "Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002). In evaluating whether good cause exists, Courts should consider factors including "the purpose for the discovery, the ability of the discovery to preclude demonstrated irreparable harm, plaintiff's likelihood of success on the merits, the burden of discovery on the defendant, and the degree of prematurity." *McMann*, 460 F. Supp. 2d at 265.

A request for expedited discovery should be allowed when the scope of discovery requested is narrow and central to a possible preliminary injunction inquiry, and the burden on the defendant is modest. *See Wheeler*, 2010 WL 3023518 at *2. In the context of a potential preliminary injunction, good cause ordinarily exists when the requested discovery is carefully targeted to issues relevant to the preliminary injunction inquiry, and the discovery request "is both 'particularized' and 'necessary ... to prevent undue prejudice' to plaintiffs." *In re Websecure, Inc. Secs. Litig.*, No. 97-10662-GAO, 1997 WL 770414 at *4 (D. Mass. Nov. 26, 1997) (internal citations omitted) (O'Toole, J.). A preliminary injunction motion need not be pending when the request for expedited discovery is made, and the fact that a defendant has not yet filed an answer does not prevent a court from granting a motion for expedited discovery. *OMG Fid., Inc. v. Sirius Technologies, Inc.*, 239 F.R.D. 300 (N.D.N.Y. 2006) (granting expedited discovery when time to answer had not lapsed and motion for preliminary injunction had not yet been filed). What matters is that the movant can show that good cause exists, in light of all the circumstances, to advance some portion of discovery ahead to the Rule 26(f)

Conference. *OMG,* 239 F.R.D. at 304; *see also Wachovia Secs., LLC v. Stanton*, 571 F. Supp. 2d 1014, 1050 (N.D. Iowa 2008).

It bears noting that "courts have recognized that good cause is frequently found in cases involving claims of infringement and unfair competition." *Semitool*, 208 F.R.D. at 276 (citing *Benham Jewelry Corp. v. Aron Basha Corp.*, No. 97-civ-3841-RWS, 1997 WL 639037 at *20 (S.D.N.Y. Oct. 14, 1997)).

     B.    <u>Good Cause Exists To Order Expedited Discovery</u>

The discovery requested by Plaintiffs is appropriately narrow and focused.  Momenta seeks production of:

(1)     The ANDA, including amendments to the ANDA, and any Drug Master File ("DMF") for Teva's proposed generic enoxaparin product.  Teva's ANDA and DMF are required by the FDA to disclose the processes used by or for Teva to manufacture generic enoxaparin.  They are expected to establish Teva's manufacturing process includes testing to confirm the presence of the 1,6-anhydro derivative (as claimed in the '886 patent) and testing to confirm the presence of particular tetrasaccharide structures (as claimed in the '466 patent).

(2)     Teva's correspondence with the FDA regarding its generic enoxaparin ANDA.  These documents will contain information concerning Teva's manufacturing and release testing methods, and will allow the Court to determine whether FDA approval of Teva's generic enoxaparin is, in fact, imminent.

(3)     Batch records (including certificates of testing and/or certificates of analysis) for any batch of generic enoxaparin that has been produced, in whole or in part, by or for Teva since August 18, 2009.  These documents will disclose the details of any release testing that Teva has conducted and will allow the Court to determine

whether Teva's enoxaparin was manufactured subsequent to the date that

Momenta's '886 patent issued.

Plaintiffs seek this focused expedited discovery in order to establish that infringing

conduct has occurred, or will shortly occur, and to fully assess whether a preliminary injunction

is necessary to protect Plaintiffs from the irreparable harm that will result upon the initiation of

sales by Teva of a generic enoxaparin product.

The burden that this limited, early discovery will place on Teva is minimal.  This is not a

request for discovery that will require comprehensive and expensive document collection efforts.

To the contrary, Momenta seeks specific clearly defined materials that, by virtue of the FDA

requirements, necessarily are readily accessible.  *See Semitool*, 208 F.R.D. at 277.  Teva's

ANDA, any related Drug Master File, and its FDA correspondence are almost certainly

maintained by Teva separately from other documents.  They will exist in electronic form in

Teva's regulatory files.  They can be located and produced with very little effort.  Similarly, the

requested manufacturing records should be in a single, readily accessible location.  The time

period as to which records are requested -- August 2009 to the present -- is short.

There is no conceivable prejudice to Teva.  The information sought would be produced in

the normal course of discovery as part of Teva's Rule 26(a)(1) initial disclosures, pursuant to D.

Mass. L.R. 16.6, or in response to a first document request served immediately after the Rule 16

Conference.  At most, the instant motion, if granted, will advance discovery of a limited and

easily accessible group of documents by a few weeks.  *See, e.g., id.* (granting motion for

expedited discovery of narrow categories of existing documents that would be produced in

normal course of discovery).  The progress of this case, and Momenta's opportunity to protect its

patent rights effectively will, however, be greatly enhanced if the present motion is allowed.

These are precisely the circumstances in which narrow expedited discovery is most appropriate.

## IV.   **CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion For Limited Expedited Discovery should be granted.

Dated:  December 28, 2010

MOMENTA PHARMACEUTICALS, INC.

By their attorneys,

*/s/ Michael E. Murawski*
Robert S. Frank, Jr. (BBO #177240)
rfrank@choate.com
Eric J. Marandett (BBO #561730)
emarandett@choate.com
Michael E. Murawski (BBO #669857)
*mmurawski@choate.com*
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA 02110
Tel.: (617) 248-5000
Fax:  (617) 248-4000


SANDOZ INC.

By their attorneys,

*/s/ Sarah Chapin Columbia*
Sarah Chapin Columbia (BBO #550155)
*scolumbia@mwe.com*
Melissa Nott Davis (BBO #654546)
*mndavis@mwe.com*
MCDERMOTT WILL & EMERY LLP
28 State Street
Boston, MA  02109
Tel.:  (617) 535-4000
Fax:  (617) 535-3800

- and –

Thomas P. Steindler *(pro hac vice pending)*
*tsteindler@mwe.com*
MCDERMOTT WILL & EMERY LLP
600 13th Street, N.W.
Washington, D.C.  20005-3096
Tel.:  (202) 756-8254
Fax:  (202) 756 8087

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)

and that paper copies will be sent to those non-registered participants (if any) on December 28,

2010.

*/s/ Michael E. Murawski*
Michael E. Murawski

4757024v2